UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

United States of America

v.

3:25-mj-233-002
3:26-mc-10
(MAD/MJK)

Melissa McDougal,

Adrian LaRochelle, Assistant United States Attorney
Paul J. Tuck, Esq. (CJA), for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

To The Honorable Mae A. D'Agostino, U.S. District Judge:

## ORDER and REPORT-RECOMMENDATION

The Court held a competency hearing on March 11, 2026. Defendant appeared and was represented by counsel. Defendant did not testify. The Court considered: (1) the testimony of Clinical and Forensic Psychologist, G. Todd, Ph.D.; (2) Dr. Todd's December 16, 2025 Forensic Evaluation which the Court received on January 9, 2026 (Dkt. 37); and (3) a December 10, 2014 letter from the New York State Office for People With Developmental Disabilities. For the reasons set forth below, the Court recommends that McDougal be found competent to stand trial, as she has not proved by a preponderance of the evidence

1

that she is suffering from a mental disease or defect rendering her mentally incompetent such that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense.

## I.  Procedural History

At her initial appearance on August 18, 2025, McDougal made an oral motion for a competency hearing. *See* (Text Minute entry from August 18, 2025). The Court granted McDougal's motion and ordered a competency examination in accordance with 18 U.S.C. 4241 *et seq*. (Dkt. 26).  A competency hearing was held on March 11, 2026. Defendant appeared and was represented by counsel appointed by the Court. Dr. Todd, the author of the Forensic Evaluation, appeared by Teams videoconference with the consent of the Government and McDougal. The Forensic Evaluation and a letter from New York State Office for People With Developmental Disabilities dated December 10, 2014 were received, without objection, in evidence as Government Exhibit 1 and Defense Exhibit 1, respectively. Dr. Todd was subjected to direct examination by the Government and cross-examination by McDougal. The Government did not offer any other evidence. McDougal was

offered the opportunity to testify but declined to do so. McDougal did not present any witnesses.

## II. Discussion

### A. Legal Standard

A court must declare a criminal defendant incompetent to stand trial if it finds "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The determination of competency turns on whether the defendant has "(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him." *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (internal quotations omitted) (citing *Dusky v. United States*, 362 U.S. 402, 402, (1960) (*per curiam*)). In assessing competency, the district court "must weigh evidence and apply evidentiary standards," *United States v. Brennan*, 928 F.3d 210, 216 (2d Cir. 2019), and "may rely on a number of factors, including medical opinion and the court's

observations of the defendant's comportment," *Nichols*, 56 F.3d at 411 (citing *United States v. Hemsi,* 901 F.2d 293, 295 (2d Cir. 1990)).

The question of which party bears the burden of proof with respect to competency remains unsettled. *See United States v. Marmolejos,* 2019 WL 2191139, *1 n.1 (S.D.N.Y.  May 21, 2019). Because this case is not one of the rare cases in which the evidence "is in equipoise," *Nichols*, 56 F.3d at 410 (internal quotation omitted), the Court does not need resolve that question. *United States v. Marmolejos*, 2019 WL 2191139 at *1 n.1.[1]

## B. The Evidence

### i.    McDougal's Demeanor

The Court observed McDougal during the hearing. McDougal sat quietly, observing Dr. Todd on the video monitor located on the table where she sat with her counsel. McDougal appeared attentive to the video monitor and did not fidget.

### ii.    Dr. Todd's Testimony

Dr. Todd was certified by the Court as an expert witness, without objection, following testimony concerning her education and

---

[1] The Government seems to have taken on at least the burden of proof by taking the witness's testimony on direct.

professional experience. Dr. Todd's direct testimony relied on the Forensic Evaluation, her recollection of her encounters with McDougal and reference to her notes. Dr. Todd met with McDougal on seven occasions, for one to two hours each time, and met with her at an outside hospital. In addition, Dr. Todd had encounters with, and made observations of, McDougal on the unit where McDougal was housed, which is where Dr. Todd's office is located.

The Court incorporates by reference the details set forth in the Forensic Evaluation, Government #1. Specifically, the Court notes that Dr. Todd found McDougal to be engaging and motivated to complete the evaluation process. McDougal paid attention, was articulate, understood the charges against her, was able to give feedback after receiving explanations, provided appropriate unprompted responses, and asked spontaneous questions when encountered on the unit.

Dr. Todd testified about the assessment process, which included review of specific documents, taking McDougal's history, review of McDougal's telephone calls and emails, observations of McDougal by Dr. Todd and other facility staff, and conversations with the Assistant United States Attorney, and McDougal's defense attorney.

5

McDougal was administered two Performance Validity tests - DCT and the b-Test - which are intended to sus out suspicious test-taking efforts. The results of these tests placed McDougal in the "Suspect Effort" range. These results are "highly suggestive of poor effort" and that "[McDougal] likely did not put forth adequate effort and attempted to appear more impaired than her true level of functioning." Government #1, p. 6.

Dr. Todd testified that these Performance Validity test results were inconsistent with her personal interactions with McDougal, noting that McDougal was able to navigate the facility, attend appointments on time, use the telephone, recall her PIN for that purpose, and able to request money from Western Union. Dr. Todd opined that McDougal does not suffer from a mental disease or defect, has a factual understanding of the legal system and her legal situation, demonstrates the ability to make rational case-related decisions, and can assist properly in her defense.

### iii.    Cross-Examination of Dr. Todd

Counsel's cross-examination of Dr. Todd's conclusions focused on the import of the findings set forth in Defendant's #1, that as of

December 10, 2014, McDougal had low intelligence scores and was diagnosed with learning and developmental disabilities, including ADHD and Aspergers. Dr. Todd confirmed that she was not provided with, and therefore did not review, McDougal's historical medical or mental health records. Nor did Dr. Todd have the reports which are described in Defendant's #1. Dr. Todd did, however, explain the test results described in Defendant's #1 which indicated low intelligence. Dr. Todd testified that her opinion of McDougal would not be different if she had reviewed Defendant's Exhibit #1 before completing the Forensic Evaluation, noting that her task was to assess McDougal as she presented before her. Dr. Todd conceded that IQ does not usually change over time, save a traumatic brain injury.

Dr. Todd testified that McDougal's low IQ score documented in Defendant's # 1 would not undermine the Performance Validity tests. That said, Dr. Todd could not confirm whether the normative sample included people with developmental or intellectual disabilities. With respect to observations of McDougal's telephone calls, Dr. Todd testified that it was *possible* for a person with developmental and intellectual disabilities to carry on a "normal" telephone call as a matter of

previously established routine, and similarly, to use a PIN and follow prompts on the telephone. Regarding the diagnosis of "other specified personality disorder with histrionic traits" Dr. Todd testified that no personality disorder tests were undertaken and that her diagnosis was based on her observations of, and information provided by, McDougal. Dr. Todd also testified that while no adaptive functioning tests were performed, she observed that McDougal did not have problems with activities of daily living. Finally, while the Forensic Evaluation does not so indicate, Dr. Todd found in her notes that the role of the jury was discussed with McDougal and McDougal responded that its role was "to find you innocent or guilty."

In sum, McDougal's position is that she is impaired by severe learning and developmental disabilities which preclude her from understanding the legal system, her legal situation, and that she is incapable of assisting with her defense and making rational case-related decisions.

### iv.    Re-Direct Examination of Dr. Todd

On re-direct examination, Dr. Todd confirmed that her opinions were based on the administered tests, her assessment of McDougal from

their scheduled sessions, and encounters on the unit. That is, the totality of Dr. Todd's work and interactions with her and staff informed her opinion in this case. Dr. Todd opined that low intelligence does not equate to incompetence. Dr. Todd explained that someone with low intelligence may need more time to understand the legal proceedings and legal concepts, and that simpler language and repetition may also be needed to educate her. She opined that the diagnoses of ADHD, anxiety and Aspergers did not equate to  incompetence. Dr. Todd noted that while it did take McDougal more time to understand some things, she frequently understood statements without reinforcement, and during telephone calls with family – sister, husband and father – she was able to update them on her interactions with Dr. Todd and other legal issues without assistance.

### v.  Findings

Having considered the documentary evidence, observations of McDougal, and the testimony of Dr. Todd, the Court recommends finding that there was not a preponderance of the evidence proving that McDougal "is presently suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to

understand the nature and consequences of the proceedings against her or to assist properly in her defense." 18 U.S.C. § 4241(d).

Dr. Todd observed that McDougal understood the charges against her, correctly identified the roles and responsibilities of courtroom participants, including the role of the judge, prosecutor, defendant, witness, and jury. McDougal's description of the events that led to her arrest were consistent with the information provided in the collateral records reviewed by Dr. Todd. McDougal demonstrated the ability to learn factual information associated with her case and the legal system.

The Forensic Evaluation shows that McDougal was able to provide Dr. Todd with a reasonable explanation of how she would like her case to proceed and the strength of the case against her. *See* (Government #1, p. 10). Similarly, McDougal was able to articulate to Dr. Todd the different legal options available to her. McDougal was able to be educated about the concept of a plea bargain, and then indicate key concepts associated with it. Thus, as Dr. Todd opined, McDougal demonstrated the ability to make rational case related decisions.

Dr. Todd found that "McDougal did not exhibit any significant impairment in attention, concentration, memory or information

processing that would impact her ability to attend and or track events during courtroom proceedings." *See* (Government #1, p.11). Dr. Todd's opinion established that McDougal could assist properly in her defense.

The Court observed Dr. Todd as she testified. In addition to being well educated and trained, she was professional and had a command of the details of McDougal's assessments, McDougal's demeanor in the facility, and during their personal encounters. Dr. Todd answered questions on cross-examination directly and clearly. Dr. Todd's testimony was compelling and her opinions were not materially challenged on cross examination.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the District Court find that there was not a preponderance of the evidence to prove that McDougal is suffering from a mental disease or defect that renders her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense; and it is further

**ORDERED,** that pursuant to *Lugosch v. Pyramid Co.,* 435 F.3d 110 (2d Cir. 2006) and Local Rule 5.3, the transcript of, and the

documents admitted into evidence at, the March 11, 2026 hearing shall be sealed, as the personal information contained therein outweighs the public's interest in having access to the same.

Dated: March 17, 2026.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge